IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF FLORIDA

FILED BY _____ D.C.

OCT 26 2020

ANGELA E. NOBLE
CLERK U.S. DIST. CT
S. D. OF FLA. - MIAMI

UNITED STATES OF AMERICA          *
                                  *
            v                     *  CASE NO. 03-10018-CR-MORENO
                                  *
ADERMIS WILSON GONZALEZ           *
                                  *

MOTION FOR COMPASSIONATE RELEASE UNDER
18 U.S.C. § 3582(c)(1)(A)(i); EXTRAORDINARY/COMPELLING
REASONS; MEDICAL ISSUES; FAMILY CIRCUMSTANCES; AND
/OR OTHER CONDITIONS OF SUPERVISED RELEASE (HOME DETENTION)
UNDER 18 U.S.C. § 3583(d) / S F1.2

        NOW COMES ADERMIS WILSON GONZALEZ, Petitioner, Proceeding
In "Pro Se" AND MOVES THIS COURT FOR SENTENCE REDUCTION AND/OR
COMPASSIONATE RELEASE AND OR/ HOME DETENTION UNDER 3582(c)(1)(A)(i),
FOR EXTRAORDINARY/COMPELLING REASONS; MEDICAL REASONS; IMPRACTICAL
MEDICAL TREATMENT; AND/OR OTHER CONDITIONS OF SUPERVISED RELEASE
(HOME DETENTION) UNDER 18 U.S.C. § 3583(d)/S F1.2; AMID COVID-19,

1

# BOP'S RESPONSE TO COVID-19 PANDEMIC

As This Court Is Well Aware, Covid-19 Is An Extremdey Dangerous Illness That has Caused Many Deaths. Not Only In The United States, But Also In The BOP Facilities, In A Short Period of Time and That Has Resulted In Massive Disruption To Society and The Economy.

On March 13, 2020, B.O.P Began To Modify It's operations; In Accordance With It's Coronavirus (COVID-19) Action Plan, To Minimize The Risk of Covid-19 Transmission Into and Inside It's Facilities. Since That Time, As Events Require, BOP Has Repeatedly Revised The Action Plan To Address The Crisis.

B.O.P's Operations Are Presently Governed By Phase (7) Seven of The Action Plan. The Current Modified Operations Plan Requires That All Inmate In "Every" B.O.P Institution Be Secured In Their           Assigned Cell/ Quarters, In Order To Stop Any Spread of The Disease.

The Petitioner Would Like To Show The Dangers of Edgefield's Implementation of This National B.O.P Action Plan. The Compound Went on Lockdown March 31, 2020, And Inmates Were continued To Be Released

2

For Work Call, As What They Called "Indispensable Needs". Inmates, As They called "Indispensable", who was Released for Work was Facility Workers, Education, BaberShop, Recreation, Landscaping, Kitchen, Unicor, Compound, Etc. These Inmates Went Out, Around Staffers, Then Come Back To The Unit To Lockdown, With Cellmates who Have Not Moved Around, Or In The Petitioner's Case, Inmates With Compromised Immune Systems. These Actions Still Placed The Petitioner At Risk of Having Covid-19 Passed Through Inmates Going To Work. With No Vaccine, The Petitioner Is A Sitting Duck With A          Chronic Illness.

It Goes Farther To State As Part of The B.O.P's Action Plan, That All Staffer's Travel Has Been Cancelled. But on June 3, 2020, B.O.P Staffer's, Including Edgefield, Were Called To Help With Concerns of The Protesting, Riots, and Looting. Another Level of Compromise To Vulnerable Inmates.

At Edgefield, Where Petitioner Is Incarcerated, B.O.P Has Reported A Total of (60+) Inmates Testing Positive For Covid-19, And (16+) Staffer's.

## 18 U.S.C. § 3582(c)(1)(A) Legal Framework Under The Enactment of The First Step Act December 21, 2018

Under 18 U.S.C. § 3582(c)(1)(A), The Petitioner Understands That This Court May, In Certain Circumstances, Grant The Petitioner's Motion To Reduce His Term of Imprisonment. But, Before Filing That Motion, The Petitioner Must First Request That BOP File Such Motion on His Behalf. § 3582(c)(1)(A). A Court May Grant The Petitioner's own Motion For A Reduction In His Sentence Only If The Motion was Filed "After The Defendant Has Fully Exhausted All Administrative Rights To Appeal A Failure of The Bureau of Prisons To Bring A Motion on The Defendants Behalf

"OR" After (30) days Have Passed From The Receipt of Such A Request By The Warden of The Petitioner's Facility, Whichever Is Earlier."

If That Exhaustion Requirements Is Met, A Court May Reduce The Petitioner's Term of Imprisonment "After Considering The Factors Set Forth In (18 U.S.C § 3553 (a))" If The Court Finds As Relevant Here, That (i) Extraordinary And Compelling Reasons Warrant Such A Reduction" And (ii) Such Reduction Is Consistent With Applicable Policy Statements Issued By The Sentencing Commission. § 3582(c)(1)(A)(i).

The Petitioner also understands that as the movant, he bears the burden to establish that he is eligible for a sentence reduction. United States v. Green, 764 F.3d 1352, 1356 (11th Cir. 2014).

The Sentencing Commission has issued a Policy statement addressing reduction of sentences under § 3582(c)(1)(A). As relevant here, the Policy statement provides that a court may reduce the term of imprisonment after considering the § 3553(a) factors if the court finds that:

(i) extraordinary and compelling reasons warrant the reduction;

(ii) the Petitioner is not a Danger to the safety of any other Person or to The Community, as Provided is 18 U.S.C. § 3142(a); and

(iii) the reduction is consistent with this policy statement U.S.S.G § 1B1.13.

The Policy statement includes an application note that specifies the types of medical conditions that qualify as "Extraordinary and Compelling Reasons." "First, that standard is met if the Petitioner is "suffering from a Terminal Illness," such as "Metastatic Solid-Tumor Cancer, Amyotrophic Lateral Sclerosis (ALS)

H.I.V or Aids; Liver Disease; End-Stage Organ
disease, lung disease, or advanced Dementia"
U.S.S.G §1B1.13, cmT. N. 1 (A)(i). Second, The
standard is met if the Petitioner is:

(I) Suffering from a serious physical or medical condition,
(II) Suffering from a serious functional or cognitive impair-
ment, or
(III) Experiencing deteriorating physical or mental health
because of the aging process,

That substantially diminishes the ability of the
the Petitioner to provide self-care within The Government
of a correctional facility and from which he is not
expected to recover.

6

## Other Conditions of Supervised Release
## (Home Confinement) Under 18 U.S.C § 3583 (d)
## 5F1.2  Due to Covid-19 Pandemic

Following the imposition of sentence, The Court has limited jurisdiction to correct or modify that sentence absent specific circumstances enumerated by Congress in 18 U.S.C. § 3582. United States V. Garcia, 606 F.3d 209, 212 (5th Cir, 2010) (Per Curiam).

Section 3582 (c) contemplates only a reduction in sentence. See § 3582 (c). But Defendant's request to serve the rest of his term in home confinement, as opposed to Prison, works No reduction to his sentence. Home Confinement merely permits the inmate to serve out his term of imprisonment at home. Defendant's request for such relief therefore falls outside § 3582 (c)'s limited granted of authority to this court to modify a sentence Post-conviction.

If a court grants a sentence reduction, it may impose a term of supervised release with or without conditions that do not exceed the unserved portion of the original term of imprisonment. § 3582 (c)(7)(A). In imposing a term of supervised release, The court

May impose a Period of Home Confinement as a condition of supervised release, Provided that the court finds that Home Confinement is a "Substitute for Imprison-ment". U.S.S.G. § 5F1.2; See U.S.C. § 3583(d). Alternatively, a court may consider modifying an existing term of supervised release to add a Period of Home Confinement Consistent with U.S.S.G § 5F1.2. See 3583(e)(2).

Mr. Wilson-Gonzalez is serving a 240-month sentence at FCI Edgefield in Edgefield, South Carolina. Mr. Wilson-Gonzalez has multiple underlying conditions that place him at an increased risk of serious illness or death from COVID-19, including Gastroesophageal Reflux Disease (GERD), Epilepsy; Urinary and Bowel Incontinence due to being totally paralysis (Paraplegic); Hypertension; Decubitus Ulcer Stage II; Positive for Tuberculosis; and Degenerative Disc Disease. Moreover, Mr. Wilson-Gonzalez is a Cubian-Desent, and suffers from obesity, which makes him more likely to experience serious illness or death due to COVID-19.

COVID-19 is not a hypothetical threat at F.C.I. Edgefield, but a real and present danger - 95 inmates and staff members have tested positive for the virus, with the numbers growing daily. In the mist of COVID-19 spreading rapidly at F.C.I. Edgefield, there is (2) reported deaths with inmates who resided at F.C.I. Edgefield, this alarming rate of infections and deaths make F.C.I Edgefield the 5th most dangerous place for a federal inmate to be out of 217 facilities, including BOP-Run Prisons, Residential Re-Entry Centers, and Privately Run Prisons. The rates at which COVID-19 has spread through other prisons illustrates the potential danger at F.C.I. Edgefield, especially for someone with Mr. Wilson-Gonzalez's risk factors are "extraordinary and compelling reasons" under 18 U.S.C. § 3582(c)(1)(A)(i), the Federal compassionate release statute. Because the factors in 18 U.S.C. § 3553(a) also weigh in favor of release, Mr. Wilson-Gonzalez moves this Court to reduce his sentence to time served.

9

# FACTUAL BACKGROUND

ON SEPTEMBER 19, 2003, MR. WILSON-GONZALEZ WAS SENTENCED BY THE COURT TO SERVE 240 MONTHS IN THE BUREAU OF PRISONS, AND THREE YEARS OF SUPERVISED RELEASE. MR. WILSON-GONZALEZ PLEA GUILTY TO AIRCRAFT PIRACY. MR. WILSON-GONZALEZ'S PROJECTED RELEASE DATE IS APRIL 29, 2021. WITH A RELEASE DATE OF APRIL 29, 2021, MR. WILSON-GONZALEZ HAS SERVED OVER 81% OF HIS TIME. HE WAS ELIGIBLE FOR TRANSFER TO A HALFWAY HOUSE IN OCTOBER 29, 2020, BUT DUE TO DEPORTATION, IT WAS TAKEN AWAY. WITH MR. WILSON-GONZALEZ PROJECTED RELEASE DATE BEING APRIL, 29, 2021, AND COVID-19 BEING A THREAT, HE MAY NOT HAVE THE LITTLE TIME TO WAIT.

## MR. WILSON-GONZALEZ'S CHRONIC HEALTH CONDITIONS — GERD, EPILEPSY, PARAPLEGIC, HYPERTENSION, DECUBITUS, ULCER STAGE II, TUBERCULOSIS, OBESITY, DEGENERATIVE DISC DISEASE — AND BEING CUBIAN IN COMBINATION WITH THE COVID-19 PANDEMIC PLACE HIM IN GRAVE DANGER OF ILLNESS OR DEATH

IN THESE FRIGHTENING TIMES OF THE COVID-19 PANDEMIC, MR. WILSON-GONZALEZ'S MULTIPLE CHRONIC HEALTH CONDITIONS HAVE PLACED HIM AT EXTREME RISK OF SERIOUS ILLNESS OR DEATH FROM COVID-19. MR. WILSON-GONZALEZ'S PROGNOSIS DURING THIS PANDEMIC IS PARTICULARLY GRAVE BECAUSE OF THE NUMBER OF COMORBIDITIES HE HAS. MR. WILSON-GONZALEZ IS NOT SUFFERING

From just one or two underlying conditions that place him at increased risk of complications from COVID-19, but rather eight: GERD, Epilepsy, Paraplegic (being totally paralysis from waist down with urinary and bowel incontinence), Hypertension, Decubitus Ulcer Stage II, Tuberculosis, Obesity, and Degenerative Disc Disease.

The more comorbidities someone has, the more likely he is to experience serious illness or death from COVID-19. Indeed, a team of doctors published a report after studying 1,590 hospitalizations in 575 hospitals in 31 different provinces in China that found patients with multiple comorbidities had increased risk for complications from COVID-19. The team of doctors "verified the significantly escalated compared risk of poor prognosis in patients with two or more comorbidities compared with those who had no or only a single comorbidity." For his various medical issues, Mr. Wilson-Gonzalez currently takes FOUR different medications. In addition to Mr. Wilson-Gonzalez's multiple comorbidities increasing his risk of severe illness or death from COVID-19, even his own race puts him at an increased risk. Finally, although not directly related to his risk of experiencing complications from COVID-19, it bears to mentioning that Mr. Wilson-Gonzalez being a paraplegic, with no bladder or bowel function, makes it extremely hard to self-care during this pandemic, due to the constant lock down, lack of movement, and because of these limited actions, it almost impossible to get the proper attention he needs.

# 1. GASTROESOPHAGEAL REFLUX DISEASE (G.E.R.D)

MR. Wilson-Gonzalez suffers from Gastroesophageal Reflux Disease (G.E.R.D), which occurs when stomach acid frequently flows back into the tube connecting his mouth and stomach (esophagus). This backwash (acid reflux) then irritates the lining of his stomach (esophagus). MR. Wilson-Gonzalez not only suffers with GERD, but has very little control over this discomforting issue, which forces him to suffer chest pains, difficulty swallowing, disrupted sleep, constant coughing, and resurgitating of food or sour liquid. Without the proper surgery to ease the symptoms, MR. Wilson-Gonzalez's suffering worsens and it adds on to other health concerns.

# 2. EPILEPSY (SEIZURE DISORDER)

MR. Wilson-Gonzalez also suffers from Epilepsy, which study shows that some people with epilepsy regardless of seizure control have other conditions that put them at higher risk from COVID-19. With MR. Wilson-Gonzalez suffering from G.E.R.D, which causes resurgitating of food or/liquids, difficulty swallowing, constant coughing; study has showed that people with epilepsy may have problems that could place them at higher risk of developing more severe symptoms with COVID-19, for example, some one with problems swallowing or frequently inhale food or liquids in their lungs (aspiration) are at higher risk for pneumonia.

It goes further to show that people with diabetes or underlying heart problems also appear to be at higher risk for severe COVID-19. Mr. Wilson Gonzalez would like to also state that he suffers from Hypertension and VENTRICULAR Septal Defect.

## 3. DEGENERATIVE DISK DISEASE

Mr. Wilso-Gonzalez also suffers from Degenerative Disk Disease, which is when "Normal" changes that take place in the disks of your spine cause pain. Nearly everyone's disk break down over time, but not every one feels pain. This would have been better put had Mr. Wilson-Gonzalez contracting this disease in a normal fashion. But, the sad truth of this is due to the malepratice of the Federal Prison's medical staff, and their lack of properly caring for Mr. Wilson-Gonzalez, caused the early stages of this disease.

In 2007, upon Mr. Wilson-Gonzalez arriving to F.C.I Fort Dix prison, he was perscribed Dilantin to treat his epilepsy. Several times he complained of symptoms, side effects, and not feeling right. The end result of the B.O.P not taking his medical concerns serious, September 14, 2008, Mr. Wilson-Gonzalez was pronounced paraplegic (paralysis from the waist down) with no bladder or bowel function (urinary and bowel incontinence) forced to live the rest of his life confined to a wheelchair, wear pampers, (having to change his pampers, clean his own feces in his bed, due to no medical help to use the toilet on his own) and a urethral catheter. Mr. Wilson-Gonzalez has been made to suffer since this accident, and

13

Now Facing A Pandemic With COVID-19, Has made It much more Harder To Function on His own With The modified confinement, limited showering, struggle To Receive His medical supplies with out Having To Sit In A confined space with other Inmates Awaiting over an Hour, NO Social Distancing, and Proper mask covering During This Pandemic. Mr. Wilson-Gonzalez Also Has complained several Times About The proper medical supplies To Protect His daily use of His wheel chair, Bed, And clothing, which causes Accidents Due To Not Being given The proper Protection, leaving Him To Fight To Find other ways To pratice cleaniness To Prevent Germs, Amid COVID-19. This Places Mr. Wilson-Gonzalez In A very Threatening Position of survival.

## 4. HYPER TENSION

Mr. Wilson-Gonzalez Also Suffers From HyperTension, Also Known As High Blood Pressure, Even In The Best Times, HyperTension Poses Serious Health Risks. Experts Say That hypertension vastly increase The Risk of Heart Disease, The leading cause of Death In The United States. The condition Also Elevates The Risk of Stroke And other diseases As well. In Addition To The Increased Risk To Mr. Wilson-Gonzalez many other comorbidities, The CDC Has Stated That People With HyperTension, Regardless of Age, Might Also be At An Increased Risk of Contracting A more Severe Case of COVID-19. In Fact, A Recent study based on COVID-19 Patients In China, Found That "Nearly Half of The Patients who Died From COVID-19 Had High Blood Pressure, which was A much Higher Percentage compared To Those with only mild COVID-19 Symptoms. The Same study Then Found That HyperTension Doubles The Risk That A person will Die From The Coronavirus. 14

## 5. Decubitus STAGE II Ulcer

Mr. Wilson-Gonzalez Also Suffers From Decubitus Stage II Ulcer, Which Is Pressure Ulcers That Are localized Areas of Tissue necrosis That Typically develop When Soft Tissue Is Compressed between A Bony Prominence And An External Surface For A long period of Time. Stage II Pressure Ulcers Are CHARActerized by PARTIAL-Thickness Skin loss Into But No Deeper Than The Dermis. Mr. Wilson-Gonzalez Suffers From The Symptoms of SHAllow With A Reddish base. In layman Term, Adipose (Fat) And Deeper Tissues That Are Not Visible, Granulation Tissue, Slough And Gschar Are Not Visible. Mr. Wilson-Gonzalez Suffers From Both Intact And Partially Ruptured Blisters That Are Results of Pressure, By Sitting For A Period of Time, No Treatment, And or lack of Attention. Mr. Wilson-Gonzalez Has Endured Skin Tears, maceration, And Excoriation.

## 6. Tuberculosis (T.B)

Mr. Wilson-Gonzalez Also Suffers From Tuberculosis Also As T.B. Mr. Wilson-Gonzalez Tested Positive For T.B In 2003, yet Again While Being In Custody of The B.O.P. Tuberculosis (TB) Is A Potentially Serious Infectious disease That mainly Affects ones lungs. The bacteria That causes Tuberculosis Is Spread From one Person To Another, With Mr. Wilson-Gonzalez, And His many Comorbidities, If He Was To Contract COVID-19, It Would Not only Be A Danger To Him But To other People Around Him Due To His Spreading of The virus.

# 7. Ventricular Septal Defect (VSD)

Mr. Wilson-Gonzalez also suffers from ventricular septal defect (VSD), which is a gap or defect in the septum between the heart's two lower chambers (ventricles). The septum is a wall that separates the heart's left and right side. Septal defects are sometimes called a "hole" in the heart. VSD is the most common heart problem that babies are born with. About 8 babies in every 1,000 born will have a problem with their heart or major blood vessels. Mr. Wilson-Gonzalez underwent an echocardiogram to show the structure of his heart. Upon seeing complexity, Mr. Wilson-Gonzalez underwent a cardiac catheterization, which is a test, with dye that can be seen by X-ray, that travels through the blood vessels, which allows the doctor to see exactly where the problem was in his heart. It was later determined that Mr. Wilson-Gonzalez's septal defect was too large to close on it's own. Therefore a atrial fibrillation was placed in the heart for rate control. Currently, Mr. Wilson Gonzalez is taking Metoprolol Tartrate for his heart.

# 8. Obesity

Mr. Wilson-Gonzalez also suffers from obesity. With him being over weight, and having multiple comorbidities, that puts him at a greater risk from COVID-19, such as heart disease. Obesity can also cause a metabolic change, such as inflammation which make it harder for the body to fight off infections. With Mr. Wilson-Gonzalez suffering from obesity, makes him more likely to experience physical ailments that make fighting COVID-19 harder, as well as hypertension, sleep apnea, and so on.

16

## 9. MR. WILSON-GONZALEZ IS CUBIAN DESENT

LAST BUT NOT AT ALL least According To Current dATA, MR. <u>WILSON-GonzAlEZ</u> IS more vulnerABlE To Serious Illness From COVID-19 BecAuse HE IS <u>CUBIAN DESENT</u>. By one estimate, nationally, <u>CUBIAN DESENT</u> DeATHs From COVID-19 Are nEARLY Two Times greATER ThAn Would be EXpECTEd bAsed on Their SHARE of The POPULATION. In Four STATES, The RATE IS THREE or more Times greATER. Even When Controlled For Age, dATA SHOWS ThAt, In Every Age CATEgory, PEOPLE OF <u>Color</u> Are Dying From COVID-19 At Roughly The SAme rATE As White PEOPLE more ThAn A decAde Older. BAsed on This dATA, COURTS Around The COUNTRY HAVE STARTED To Recognize being <u>CUBIAN DESENT</u> AS PART Of Their REASONS FOR grAnting CompAssionAte RELEASE. A DiSTriCT COURT JUdge In The CENTRAL DISTRICT of Illinois SummARiZED The ISSUE Well:

...According To The CDC 'long-STAnding SySTEmic HEAlTH And SociAl InEquiTiEs HAvE PUT Some mEmbERS OF RACIAl And ETHNiC minoriTy groups At IncREAsed RISK OF getting COVID-19 OR ExpERiEncing SEvERe Illness, REgArdLESS OF AgE, And Among Some RACIAL And ETHNiC minoriTy groups, InclUding Non-HISPANIC blAck PERSons, HispAnics And lATinos, And AmERicAn IndiAns, AlASKA NATivEs, EvidENCE Points To HighER rATes

17

Of Hospitalization or Death From COVID-19 Than Among Non-Hispanic White Persons." (United States v. Harris, 2020 WL 3483559 (C.D. Ill. June 26, 2020).

In The 11th Circuit, Judge May And Pannell Have recently granted compassionate release motions And listed The Fact That The Defendants were African American As A Reason For granting compassionate Release. (United States v Hill. N.D GA. (June 10, 2020); united states v. Bellass. N.D GA (July 8, 2020)). Judge May observed That The CDC Has Acknowledged That Racial And Ethnic minority groups, Including Cuban Desent, Are carrying A Disproportionate burden Of Illness And Death As a Result of Covid-19.

## Request Of Compassionate Release Filed To The Warden / Response

On April 24, 2020, Mr Wilson-Gonzalez Filed Request With Warden Phelps on A cop-out. Mr. Wilson-Gonzalez Received A Response For More Information on May 25, 2020. On May 29, 2020, Mr. Wilson-Gonzalez Sent The Requested Information, And As of October 19, 2020, No Other Response Has Been Given.

Finally, Mr. Wilson-Gonzalez's continued Incarceration would flip § 3553(a)(2)(D) on It's head. That provision directs the court to consider the need for the sentence imposed to " provide the defendant with ... medical care ... In the most effective manner." As noted, In addition to all the medical conditions he has that make him more vulnerable to covED-19, He also has trouble receiving proper medical supplies, and also serious concerns on the proper response from the medical staff when medical attention Is requested, on July 28, 2020, Mr. Wilson-Gonzalez Filed a BP-8 complaining about medical concerns, such as vomiting several times, he also requested to see a doctor or P.A. stating that he had symptoms of covED-19, and wanted to be tested, but on the response from the health service provider, Mrs. Lanham, she stated " your provider will review your case, please submit a sick call request." This alone, shows the lack of seriousness that medical takes on Mr. Wilson-Gonzalez's life. Due to his being paraplegic, he cannot get care due to the pandemic stripping prisons of their ability to provide even a basic level of care to Inmates, Mr. Wilson-Gonzalez would undoubtedly be safer outside of prison walls and more able to get medical care that he desperately need. Notably, as the covED-19 pandemic continues to rage through our country and In particular our jails and prisons has only shown that we must release vulnerable defendants like Mr. Wilson-Gonzalez before It's too late.

19

<u>THE CORONAVIRUS, AND THE COVID-19 disease, HAVE Flooded
The Federal Prisons And Now Pose A VERY REAL THREAT TO
MR. Wilson-Gonzalez life.</u>

COVID-19, A novel coronavirus, HAS CAUSED The most DAngerous
Out Break of Infectious disease In generations. (<u>John M. BARRY, The</u>
<u>Single most Important Lesson From The 1918 Influenza, H++p: //</u>
<u>www.nyTimes.com</u>). On MARCH 11,2020, The WORLD HEALTH ORGanization
officially labelled The COVID-19 outbreak AS A Pandemic. The WHO
estimates That one In Five People who do contract It Require Hospital-
-ization. As of AUGUST 6,2020, There HAVE Been more Than 18.6 million
Confirmed COVID-19 cases with 702,642 Deaths From The virus. (<u>WHO</u>
<u>Coronavirus Disease (COVID-19) DASHBOARD, AVAILABLE At H++p: //</u>
<u>COVID19.who.int//</u>). As of AUGUST 6,2020, the State of South
Carolina, where FCI EdgeField Is located, HAS 96,797 TOTAL cases
of COVID-19 And 1,943 CORONAVIRUS-RELATED Deaths.

ON June 26,2020, FCI EdgeField REPORTED It's FIRST CASES
with Two staff members Testing Positive, And The number of Positive
CASES HAS Grown Exponentially since Then. By AUGUST 6,2020, 26 staff
members HAVE TESTED Positive, According TO FCI EdgeField,

The First Confirmed case of An Inmate came on July 17, 2020. As of August 6, 2020, less Than Three weeks later, The Prison has reported 70 cases Among Inmates, and The Number Is growing daily. That Amounts To An Increase of 6,900% over less Than Three weeks. The Chart below shows The exponential Increase of cases At FCI Edgefield once COVID-19 Arrived.



The Chart Also Tell Another Tale: BOP cannot Protect The Inmates In It's Ill-equipted care. While FCI Edgefield moderately Controlled The Out Break Among Staff - likely Through sending staff members Home, Telling Them To Socially distance, Wear PPE, and wash Their Hands - This Chart Shows That F.C.I. Edgefield cannot control The Spread of The virus Among Inmates.

21

<u>Petitioner Has Successfully Met The Minimum</u>
<u>Requirements Under The "First Step Act" To</u>
<u>File For Compassionate Release Under § 3582 (c)(1)(A)</u>
<u>To The Court</u>

As explained above, § 3582 (c), under
The First Step Act, Requires that a sentence
reduction be presented first to B.O.P. For it's
consideration; ① only after (30) days has passed, (or)
② The Defendant has exhausted all administrative
rights to Appeal The BOP's failure to move on the
Petitioner's behalf, may a Petitioner move for a
sentence reduction in court.

Accordingly, It's well established that once a
district court has pronounced sentence and the sentence
becomes final, The Court has no inherent authority
to reconsider or alter that sentence. Rather, it may
do so only if authorized by statue. See. E.g.,
United States v. Addonizio, 442 U.S. 178, 189 / n.16
(1979); United States v. Washington, 549 F.3d 905,
917 (3d Cir. 2008); United States v. Smartt, 129 F.3d
539, 540 (10th Cir. 1997) " A District Court Does

Not Have Inherent Authority to modify a Previously Imposed sentence; It may do so only pursuant to statutory Authorization.

Consistent with that principle of finality, § 3582 (c) provides that court generally "May Not Modify A Term of Imprisonment once it has been imposed", except in (3) Three circumstances: (i) upon a motion for reduction in sentence under § 3582 (c)(1)(A), such as that presented by The Petitioner; (ii) "To The Extent Other Wise Expressly Permitted by statute or by Rule 35 of Federal Rules of Criminal Procedure", § 3582 (c)(1)(B); and (iii) where The Petitioner was sentenced "Based on" a Retro Actively lowered Sentencing range. § 3582 (c)(2).

The Petitioner moves forward with the understanding that until The Enactment of The "First Step Act" on December 21, 2018 Inmates were not entitled to file motions under § 3582 (c). But, In light of the Statutory Command that any sentence reduction be "Consistent With Applicable Policy Statements Issued by The Sentencing Commission", § 3582 (c)(1)(A)(ii), and

the lack of any plausible reason to treat motions filed by inmates differently from motions filed by B.O.P, The Policy statement applies to motions filed by inmates as well.

With the above mentioning, The Petitioner choose to file to The Court after (30) Days of submitting the request and recieving the unanswered response. The Petitioner also choose to file in this manner due to impractical Medical Attention and his Medical issues he has been battling for over (1) year at this facility with no Medical Doctor available, and the constant threat of Covid-19.

The Petitioner seeks his motion to being Granted as he has satisfied the Mandatory requirements in filing under The First Step Act, Compassionate Release to The Court.

# Conclusion

Mr. Wilson-Gonzalez is requesting the court to see he clearly has extraordinay and compelling reasons with the 7 ailments he suffers from. It has become a proven fact that the coronavirus at F.C.I Edgefield would be a devilish test of anyone's leadership, but BOP has failed beyond measure, while the errors are metastasizing. This failed coronavirus response is not a story of mistakes that were made and have now been corrected. It's a story of mistakes that continue to cost lives. At F.C.I Edgefield, so far in counting, has lost two inmates to this deadly virus, due to the lack of social distance, poor health care assistance, and little to no recovery response.

Mr. Wilson-Gonzalez request that his motion be granted due to not only the inadequate medical attention, but also amid COVID-19, both causing risk inside F.C.I Edgefield facility, Mr. Wilson-Gonzales ask that you grant his motion on the basis of him being non-violent, no threat to the community, and being more at risk here, than in his home.

# CERTIFICATE OF SERVICE

I HEREBY Certify That on This 20th DAY of OCTOBER 2020, I CAUSED To Be Served The AFore mentioned Petitioner's "Motion For Compassionate Release under 18 U.S.C. § 3582(c)(i)(A)(i); Extraordinary/ Compelling Reasons; Medical Issues; Family Circumstances; And/Or Other Conditions of Supervised Release (Home Detention) under 18 U.S.C. § 3583(d) /5F1.2" VIA First Class, U.S. MAIL, Postage Pre Paid, Sent To UNITED STATES District Court; 400 N. Miami Ave, Miami, FL. 33128.

# DECLARATION

I, ADERMIS Wilson-Gonzalez, Do Here By Declare, And Affirm Pursuant To 28 U.S.C. § 1746, under The Penalty Of Perjury, That The AForementioned Information stated Is True And Correct To The Best of my Knowledge, Information, Recollection And Belief.

ADERMIS Wilson-Gonzalez -39061-004
FEDERAL Correctional FAcility
P.O. Box 725
Edgefield, S.C. 29824



CERTIFIED MAIL

7017 1000 0000 8584 4939

$0.00

From: Wilson-Gonzalez, H.
Reg. No. 39061-004
Federal Correctional Institution
Estill, P.O. Box 725
Estill, S.C. 29621

To: United States District Court
400 N. Miami Ave.
Miami, Florida 33128

USPS (USPS CERTIFIED)

copy #1